STUART F. DELERY
Acting Assistant Attorney General
ANTHONY J. COPPOLINO
Deputy Branch Director
BRYAN R. DIEDERICH (MA Bar. No. 647632)
United States Department of Justice
Civil Division
20 Massachusetts Ave, NW
Washington, D.C.  20004
Tel: (202) 305-0198; Fax: (202) 616-8470
Bryan.Diederich@usdoj.gov
*Counsel for the Defendants*

# UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| NATIONAL COALITION FOR MEN and JAMES LESMEISTER, Individually and on behalf of others similarly situated,<br><br>    PLAINTIFFS,<br><br>    vs.<br><br>SELECTIVE SERVICE SYSTEM; LAWRENCE G. ROMO, as Director of SELECTIVE SERVICE SYSTEM; and DOES 1 through 10, Inclusive,<br><br>    DEFENDANTS. | Case No.:  CV13-02391-DSF(MANx)<br><br>Hearing Date:  July 29, 2013<br>Hearing Time:  1:30 p.m.<br>Hearing Location:  Courtroom 840, Roybal Federal Building, 255 East Temple Street, Los Angeles California 90012<br><br>Hon. Dale S. Fischer |

DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS

# TABLE OF CONTENTS

TABLE OF CONTENTS ........................................................................................i

TABLE OF AUTHORITIES ..............................................................................iii

INTRODUCTION ...............................................................................................1

BACKGROUND .................................................................................................1

I.    THE MILITARY SELECTIVE SERVICE ACT & THE ROLE OF
      WOMEN IN THE MILITARY.....................................................................1

      A.    REGISTRATION WITH THE SELECTIVE SERVICE. ...................2

      B.    *ROSTKER*:  THE SUPREME COURT DEEMS MALE-ONLY
            REGISTRATION CONSTITUTIONAL.............................................3

      C.    THE EVOLVING ROLE OF WOMEN IN THE UNITED STATES
            MILITARY. .........................................................................................5

II.   PLAINTIFFS' CHALLENGE. .....................................................................6

ARGUMENT.......................................................................................................7

I.    THE COURT SHOULD DISMISS THE CASE BECAUSE NEITHER
      PLAINTIFF HAS STANDING. ...................................................................8

      A.    JAMES LESMEISTER HAS SUFFERED NO INJURY THAT CAN
            BE REDRESSED BY THIS COURT. ................................................9

      B.    NCFM CANNOT SHOW ASSOCIATIONAL STANDING. ...........11

II.   THE COURT SHOULD DISMISS THE CASE BECAUSE IT HAS BEEN
      BROUGHT IN THE WRONG VENUE.......................................................13

III.  THE COURT SHOULD DISMISS THE CASE BECAUSE IT IS NOT YET
      RIPE. ..........................................................................................................16

IV.   SHOULD THE COURT REACH THE MERITS OF THIS CASE, IT
      SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON
      WHICH RELIEF CAN BE GRANTED. ....................................................17

      A.    THE LEGAL THEORIES OF COUNTS I & III APPLY TO STATE,
            NOT FEDERAL ACTORS................................................................18

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.,* **CV13-02391-DSF(MANx)**

**-i-**

B.   PLAINTIFFS FAIL TO STATE A VALID EQUAL PROTECTION
CHALLENGE AT THIS STAGE. ......................................................19

1.   THE COURT SHOULD DEFER TO THE POLITICAL
BRANCHES' DETERMINATIONS REGARDING THE
COUNTRY'S MILITARY NEEDS.........................................20

2.   EVEN IF THE COURT DECLINED TO DEFER TO THE
MILITARY, IT WOULD REMAIN BOUND BY *ROSTKER*
AT THIS STAGE. ...................................................................23

CONCLUSION.......................................................................................................25

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.,* **CV13-02391-DSF(MANx)**

**-ii-**

# TABLE OF AUTHORITIES

## CASES

*Allen v. Wright*, 468 U.S. 737 (1984) ...................................................................10

*Associated Gen. Contractors of Am. v. California Dept. of Transp.*, 713 F.3d 1187
    (9th Cir. 2013) ...............................................................................................12, 13

*Califano v. Webster*, 430 U.S. 313 (1977) ............................................................19

*Chappell v. Wallace*, 462 U.S. 296 (1983)............................................................20

*City of Los Angeles v. Lyons*, 461 U.S. 95 (1983)..................................................8

*Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138 (2013) ....................................8, 10

*District of Columbia v. Carter*, 409 U.S. 418 (1973)............................................18

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167 (2000) ........8

*Goldman v. Weinberger*, 475 U.S. 503 (1986)......................................................20

*Hart v. Massanari*, 266 F.3d 1155 (9th Cir. 2001) ..............................................24

*Heckler v. Matthews*, 465 U.S. 728 (1984) ..........................................................11

*Hertz Corp. v. Friend*, 130 S. Ct. 1181 (2010)......................................................16

*Holder v. Humanitarian Law Project*, 130 S. Ct. 2705 (2010)............................20

*L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932 (C.D. Cal.
    2011) ...............................................................................................................16

*Loving v. U.S.*, 517 U.S. 748 (1996).....................................................................20

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1998).............................................11

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011)...........................................8

*Musladin v. Lamarque*, 555 F.3d 830 (9th Cir. 2009)...........................................24

*Payne v. Tennessee,* 501 U.S. 888, 827 (1991) ......................................................24

*Raines v. Byrd*, 521 U.S. 811 (1997) ......................................................................8

*Rambus, Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946 (N.D. Cal. 2008)
    .........................................................................................................................24

*Rangel v. Holder*, No. CV 10-00129 DDP (FMOx), 2012 WL 1164080 (C.D. Cal.
    Apr. 9, 2012)..................................................................................................14

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-iii-

*Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477 (1989) ... 23

*Rostker v. Goldberg*, 453 U.S. 57 (1981) ........................................................ passim

*Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47 (2006) ................ 21

*San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522 n.21 (1987) ........................................................................................ 18, 20

*Schwartz v. Brodsky*, 265 F. Supp. 2d 130 (D. Mass. 2003) .................................. 21

*Selective Draft Law Cases*, 245 U.S. 366 (1918) ...................................................... 1

*Selective Service Sys. v. Minnesota Public Interest Research Group*, 468 U.S. 841 (1984) ............................................................................................................ 9

*Solorio v. U.S.*, 483 U.S. 435 (1987) ...................................................................... 20

*State Oil Co. v. Kahn*, 522 U.S. 3 (1997) ............................................................... 24

*Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83 (1998) ................................... 11

*Summers v. Earth Island* Inst., 555 U.S. 488 (2009) ............................................. 13

*Texas v. U.S.*, 523 U.S. 296 (1998) ....................................................................... 16

*Weiss v. U.S.*, 510 U.S. 163 (1994) ........................................................................ 20

*Zhang v. Chertoff*, No. C 08-02589 JW, 2008 WL 5271995 (N.D. Cal. Dec. 15, 2008) ........................................................................................................... 14

## STATUTES

10 U.S.C. § 652 ...................................................................................................... 22

10 U.S.C. § 652(a)(1) & (2) .................................................................................... 22

10 U.S.C. § 652(a)(3) .......................................................................................... 6, 22

28 U.S.C. § 1331 .................................................................................................... 13

28 U.S.C. § 1343(3) & (4) ...................................................................................... 13

28 U.S.C. § 1391(b) ............................................................................................... 13

28 U.S.C. § 1391(c)(2) ........................................................................................... 16

28 U.S.C. § 1391(d)(1) ........................................................................................... 14

28 U.S.C. § 1391(e) ............................................................................................... 13

28 U.S.C. § 1406(a) ............................................................................................... 16

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-iv-

42 U.S.C. § 1983.................................................................................18

5 U.S.C. § 3328...................................................................................3

### CONSTITUTIONAL PROVISIONS

U.S. Const. Amend. XIV ....................................................................18

### RULES

Federal Rule of Civil Procedure 12(b)(6)...........................................17

### REGULATIONS

32 C.F.R. § 1615.4(a) ..........................................................................2

4 C.F.R. § 668.37.................................................................................3

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.*, **CV13-02391-DSF(MANx)**

**-v-**

**INTRODUCTION**

This case—a facial challenge to the thirty-three-year-old Military Selective Service Act's requirement that males, but not females, register with the Selective Service System—is brought by the wrong plaintiffs, in the wrong court, at the wrong time.  As set forth further below, none of the Plaintiffs have standing to challenge the Act's constitutionality.  In addition, venue is lacking in this district because none of the Plaintiffs, the Defendants, or the events at issue in the case have any particular connection to the Central District of California.  Third, even if they had standing and this Court were the proper venue, Plaintiffs' claims are unripe because the policy change that forms the basis of their challenge remains in the process of being implemented and is not yet fully in place.  Finally, assuming those threshold defenses are insufficient, Plaintiffs fail to state a claim upon which relief can be granted because the law requires deference to the military and Congress in enacting changes in military policies, including the Selective Service registration system.

**BACKGROUND**

**I.    THE MILITARY SELECTIVE SERVICE ACT & THE ROLE OF WOMEN IN THE MILITARY.**

The United States Constitution empowers Congress to "raise and support Armies."  U.S. Const. pmbl.; art I., § 8.  Encompassed in the power to raise an army is the power to draft and induct citizens into that army.  *See Selective Draft Law Cases*, 245 U.S. 366, 381-82 (1918).  In 1980, President Carter asked for, and

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-1-**

1   Congress to provided, funds to reinstate Selective Service registration in order to

2   "meet … future mobilization needs rapidly if they arise."  *See* Committee on

3   Armed Services, 96th Cong., Presidential Recommendations for Selective Service

4   Reform 7 (Comm. Print. 1980) (hereinafter "Presidential Recommendations");

5   Joint Resolution, Pub. L. 96-282, 94 Stat. 552, 552 (1980).

6   The rationale for requiring registration despite the fact that there is no active

7   draft is to provide a ready pool of potential inductees should an urgent need for a

8   draft arise.  *See Rostker v. Goldberg*, 453 U.S. 57, 60 (1981).  Consequently, the

9   Military Selective Service Act ("MSSA") provides that, with few exceptions, all

10  men between the ages of eighteen and twenty-six must register with the Selective

11  Service in the manner proscribed by the President and regulations of the Selective

12  Service.  *See* 50 U.S.C. app. § 453(a).

13  A.   **Registration with the Selective Service.**

14  Registration can be accomplished by in a variety of ways.  The registrant is

15  required to provide no more than his "name, date of birth, sex, Social Security

16  Account Number (SSAN), current mailing address, permanent residence, telephone

17  number, date signed, and signature, if requested …."  32 C.F.R. § 1615.4(a).  The

18  estimated time to fill out the form is less than two minutes.  *See* 73 Fed. Reg.

19  50391 (Aug. 26, 2008).  As Plaintiffs allege, most everyone complies with the

20  registration requirements.  *See* Compl. ¶ 11.  Failure to register when required, on

21  the other hand, can have consequences, including criminal liability or bans on

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.*, **CV13-02391-DSF(MANx)**

**-2-**

federal employment or student aid.  *See* 50 U.S.C. app. § 462(a); 5 U.S.C. § 3328; 4 C.F.R. § 668.37.

### B. *Rostker*:  The Supreme Court Deems Male-Only Registration Constitutional.

At the time that Congress appropriated the funds to reinstitute the registration requirement, there was debate about whether to require women to register along with men.  President Carter recommended that "women as well as men should be subject by law to registration, induction and training for service in the Armed Forces."  Presidential Recommendations at 23.  Subsequently, the Senate Armed Services Committee considered, and ultimately rejected, a proposal to require women to register.  *See* Department of Defense Authorization for Appropriations for Fiscal Year 1981:  Hearings on S. 2294 before the Senate Committee on Armed Services, 96th Cong., 2d Sess., 1655-1739 (1980); S. Rep. No. 96-826, at 156-61 (1980).

In rejecting the proposal, the Committee wrote that "[c]urrent law and policy exclude women from being assigned to combat in our military forces, and the committee reaffirms this policy.  The policy precluding the use of women in combat is, in the committee's view, the most important reason for not including women in a registration system."  S. Rep. No. 96-826, at 157.  The committee adopted specific findings, including that, if a draft were instituted, "the primary manpower need would be for combat replacements," which could not include women.  *Id.* at 160.  Ultimately, the committee concluded, "the arguments for

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-3-**

treating men and women equally—so compelling in many areas of our national life—simply cannot overcome the judgment of our military leaders and of the Congress itself that a male-only system best serves our national security." *Id.* at 159. The conference committee that considered the legislation endorsed the Specific Findings in the Senate Armed Services Committee Report. *See* S. Rep. No. 96-895, at 100 (1980) (Conf. Rep.). The findings were then adopted by both houses of Congress. *See Rostker*, 453 U.S. at 74. Given this explicit adoption of the findings of the Senate Armed Services Committee, the Supreme Court concluded that its findings were "in effect the findings of the entire Congress." *Id.*

Following Congress's findings, the Court in *Rostker* acknowledged that, "[t]he purpose of registration … was to prepare for a draft *of combat troops*." *Id.* at 76. Because women were excluded from combat positions by dint of both statute and executive policy, the Court reasoned, Congress reasonably concluded that women would not be needed in a draft and therefore need not register. *See id.* "Men and women," the Court wrote, "because of the combat restrictions on women, are simply not similarly situated for purposes of a draft or registration for a draft." *Id.* at 79. In reaching this conclusion, the Court emphasized that, while it could not "abdicate [its] ultimate responsibility to decide the constitutional question," it must be careful "not to substitute [its] judgment of what is desirable for that of Congress, or [its] own evaluation evidence for a reasonable evaluation by the Legislative Branch." *Id.* Accordingly, the Court emphasized that it must

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.*, **CV13-02391-DSF(MANx)**

**-4-**

1    defer to Congress' military judgments, noting that, "[n]ot only is the scope of

2    Congress' constitutional power in this area broad, but the lack of competence on

3    the part of the courts is marked." *Id.* at 65.

4

5          **C.  The Evolving Role of Women in the United States Military.**

6          The core of Plaintiffs' position appears to be that, because Congress and the

7    Executive have increasingly adopted the military judgment that there is a place for

8    women in combat roles, they must also amend their military judgment about draft

9    needs (even before the military has implemented policy changes regarding women

10   in combat roles).  While the parties can agree that the role of women in the military

11   has changed and continues to change, Plaintiffs' conclusion—that Selective

12   Service policy must immediately be declared unconstitutional—does not follow.

13

14         The restrictions on women in combat have eased over time.  In 1993,

15   Congress repealed statutory prohibitions on women in combat aircraft and ships.

16   In 1994, the Secretary of Defense issued the "Direct Ground Combat Definition

17   and Assignment Rule," which opened some units previously closed to women.  *See*

18   Office of the Undersecretary of Defense for Personnel and Readiness, Report to

19   Congress on the Review of Laws, Policies & Regulations Restricting the Service of

20   Female Members in the United States Armed Forces 17-18 (2012) (hereinafter

21   "2012 Report") (Ex. A at 48-49).  In February 2012, the Undersecretary of Defense

22   for Personnel and Readiness reported to Congress that the military intended to

23   modify the 1994 policy, opening approximately 14,000 positions in the military to

24

25

26

27

28

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.***, CV13-02391-DSF(MANx)**

-5-

women.  *See* 2012 Report at 19-22 (Ex. A at 50-53).

Most recently, on January 24, 2013, the Secretary of Defense and the Chairman of the Joint Chiefs of Staff announced that the 1994 policy was rescinded and that the United States military would begin opening additional positions to women.  *See* Memorandum for Secretaries of the Military Departments, Jan 24. 2013 (Ex. B at 54-57).  The attachment to that memorandum provides that it may take until September 2015 for the services to develop occupational standards for units currently closed to women.  *See id.*  Complete implementation of the changes may take until 2016.  *See id.*

Implementation of changes will be closely monitored by Congress.  Each time a type of unit or position is opened to women, the Secretary of Defense must report to Congress, providing a justification for opening the position.  *See* 10 U.S.C. § 652(a)(3)(A).  Mindful of the connection between the composition of the military and the Selective Service, the law also requires that the Secretary of Defense accompany each report with, "a detailed analysis of the proposed change with respect to the constitutionality of the [MSSA] … to males only."  *Id.* § 652(a)(3)(B).

## II.   PLAINTIFFS' CHALLENGE.

Plaintiffs ask this Court to force the government to implement changes to the Selective Service system midstream, while implementation of the women-in-combat policy is still ongoing and before Congress has even had the opportunity to

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-6-**

see how the military intends to implement the recent policy change.  Both Lesmeister and NCFM allege that the male-only registration requirement violates the Fifth Amendment of the Constitution (Count I), the Fourteenth Amendment of the Constitution (Count II) and "28 U.S.C. § 1983" (Count III).  They specifically request from this Court "injunctive and declaratory relief for Defendants to treat women and men equally by requiring both women and men to register for the U.S. military draft."  Compl. at 1.

## ARGUMENT

For several reasons set forth below, the Court should dismiss this case at the threshold.  First, neither Plaintiffs Lesmeister nor NCFM have standing to bring this claim, which, in any event, is not yet ripe for judicial consideration.  In addition, there is no reason for this suit—brought by a Plaintiff from Texas and a corporation that appears to have its base of operations in  San Diego against an federal agency located in the Washington, D.C. area—to be heard in the Central District of California.  Even if Plaintiffs could overcome these substantial procedural barriers to proceeding, their claims must be dismissed for failure to state a claim.  Two of Plaintiffs' three counts concern laws directed to state officials, not the federal government.  The remaining count—that the current Selective Service registration process violates the Fifth Amendment—must be dismissed because the Court cannot grant relief on the claim without abridging a long tradition of deference to the judgment of Congress and the military as they

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.*, **CV13-02391-DSF(MANx)**

**-7-**

1  proceed to implement changes to the role of women in combat and consider its

2  impact, if any, on Selective Service registration.  In the meantime, the district court

3

4  cannot disregard binding Supreme Court precedent.

5  **I.      THE COURT SHOULD DISMISS THE CASE BECAUSE NEITHER
6            PLAINTIFF HAS STANDING.**

7            In order to invoke the Court's jurisdiction, both Plaintiffs Lesmeister and

8  NCFM "must satisfy the threshold requirement imposed by Article III of the

9  Constitution by alleging an actual case or controversy."  *City of Los Angeles v.*

10 *Lyons*, 461 U.S. 95, 101 (1983).  Part-and-parcel of the Article III threshold

11 showing of jurisdiction is a showing that the plaintiff has standing to sue.  *See, e.g.*,

12 *Maya v. Centex Corp.*, 658 F.3d 1060, 1067 (9th Cir. 2011).  To satisfy Article

13

14 III's standing requirement, "a plaintiff must show (1) it has suffered an 'injury in

15 fact' that is (a) concrete and particularized and (b) actual or imminent, not

16 conjectural or hypothetical; (2) the injury is fairly traceable to the challenged

17

18 action of the defendant; and (3) it is likely, as opposed to merely speculative, that

19 the injury will be redressed by a favorable decision."  *Friends of the Earth, Inc. v.*

20

21 *Laidlaw Envtl. Servs., Inc.*, 528 U.S. 167, 180-81 (2000).  A plaintiff cannot satisfy

22 these standards by merely reciting "a bare legal conclusion."  *See Maya*, 658 F.3d

23

24 at 1068.  The standing inquiry is particularly rigorous where, as here, a court is

25 asked to find the actions of the other branches of government unconstitutional.  *See*

26

27 *Clapper v. Amnesty Int'l USA*, 133 S. Ct. 1138, 1147 (2013) (citing *Raines v. Byrd*,

28 521 U.S. 811, 819-20 (1997)).  As demonstrated below, aside from boilerplate

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-8-**

assertions that this Court has jurisdiction and that a case or controversy exists, *see* Compl. ¶¶ 2, 24, the Complaint is bereft of any allegation that would demonstrate that either Lesmeister or NCFM has standing to invoke this Court's jurisdiction to strike down regulations promulgated pursuant to Congress's statute.

### A.   James Lesmeister Has Suffered No Injury That Can Be Redressed by This Court.

Plaintiff Lesmeister has failed to establish standing for two reasons: he has failed to allege an injury-in-fact, and he has failed to provide even a threadbare allegation that the relief he seeks would redress an injury (if he were actually injured).

Lesmeister fails to even allege that he has been injured by the United States' current Selective Service policies.  There is but a single paragraph about Lesmeister in the Complaint, and it does not allege that Lesmeister has suffered any injury at all, let alone a concrete personal injury linked to the change in military policy on women in combat announced in January 2013.  *See* Compl. ¶ 10.

Nor is there any possibility that he can demonstrate any concrete harm cognizable under Article III.  Because Lesmeister has registered with Selective Service, he is not subject to any action to enforce the requirements of the MSSA.  *See, e.g.*, *Selective Service Sys. v. Minnesota Public Interest Research Group*, 468 U.S. 841, 853 (1984) (noting that non-registrant becomes eligible for student aid as soon as he registers).  Nor can he credibly argue that the prospect of being drafted constitutes a concrete harm.  Whether there would ever be a war that would prompt

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-9-

1   Congress to reinstate draft procedures is entirely speculative and therefore cannot
2   support standing.  *See Clapper*, 133 S. Ct. at 1142.

3          Even had Lesmeister adequately pled an injury, he would still lack standing
4   because the Court could not redress the injury by taking the action that he
5   proposes.  According to the Complaint, Lesmeister seeks "injunctive and
6   declaratory relief for Defendants to treat women and men equally by requiring both
7   women and men to register for the U.S. military draft."  Compl. at 1.  If the Court
8   ordered that relief, Lesmeister would remain in precisely the same position as he
9   does today.  Because he neither bears the burden of registering any longer nor
10  faces any risk of negative consequences for non-registration, registering women
11  would do nothing to remove any burden from him.  Thus, the request for injunctive
12  relief will have no effect on Lesmeister's status with the Selective Service.  On the
13  one hand, if registration for everyone is cancelled going forward, it will have no
14  effect because Lesmeister is already registered.  On the other hand, if women are
15  required to register as well as men, Lesmeister's position is not altered either, as he
16  would remain registered.

17         Ultimately, the mere desire that the government adopt policies consistent
18  with Lesmeister's view of the Constitution is not sufficient to confer standing
19  under Article III.  *See Allen v. Wright*, 468 U.S. 737, 754 (1984) ("This Court has
20  repeatedly held that an asserted right to have the Government act in accordance
21  with the law is not sufficient, standing alone, to confer jurisdiction on a federal

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-10-

1    court.").[1]  Article III does not create "publicly funded forums for the ventilation of

2    public grievances," *see Valley Forge Christian Coll. v. Americans United for*

3

4    *Separation of Church & State*, 454 U.S.464, 473 (1982), nor are the federal courts

5    an appropriate forum for Plaintiffs to use to merely obtain policy changes they

6    prefer.  *See Steel Co. v. Citizens for a Better Env't,* 523 U.S. 83, 106-07 (1998)

7

8    (plaintiff lacks standing based on "'undifferentiated public interest' in faithful

9    execution of [a statute]") (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 577

10

11   (1998).  As explained in more detail below, the appropriate forum for debating the

12   future of the Selective Service is in Congress.  Lesmeister lacks standing to turn

13   that policy debate into a justiciable case for this Court.

14

15       **B.    NCFM Cannot Show Associational Standing.**

16       Like Lesmeister, Plaintiff NCFM has failed to plead the facts necessary to

17   support its claim for standing.  NCFM attempts to invoke "organizational

18   standing" on behalf of its members.  *See* Compl. ¶ 9.  In order to invoke standing

19

20   on behalf of its members, NCFM must show that "(a) its members would otherwise

21   have standing to sue in their own right; (b) the interests it seeks to protect are

22   germane to the organization's purpose; and (c) neither the claim asserted nor the

23

24   _____

25   [1] Lesmeister cannot rely on the line of cases cited in *Allen* concerning "stigmatic"
26   injuries.  Not only does the Complaint not allege a stigmatic injury, but stigmatic injury
     cases rely on the proposition that a "disfavored group" can be injured by the stigma that
27   they are "innately inferior."  *See Heckler v. Matthews*, 465 U.S. 728, 739-40 (1984).  No
     such alleged injury is implicated here.
28

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.*, **CV13-02391-DSF(MANx)**

**-11-**

1  relief requested requires the participation of individual members in the lawsuit."

2  *Associated Gen. Contractors of Am. v. California Dept. of Transp.*, 713 F.3d 1187,

3

4  1194 (9th Cir. 2013).  NCFM merely recites the legal conclusion that it meets these

5  standards while providing virtually no details to show that its claim is even

6

7  plausible.  *See* Compl. ¶ 9.  NCFM states that many of its members are males who

8  are or will be between eighteen and twenty-five, *see id.*, but alleges no further facts

9  to suggest that they are harmed by, or even subject to, the registration requirement.

10          The MSSA exempts from registration certain non-citizens, members of the

11

12  military, students at certain military academies, and certain members of the

13  military reserves from the registration requirement.  *See* 50 U.S.C. app. §§ 453(a),

14

15  456(a)(1).  Aside from asserting that some members of NCFM are males who are

16  of registration age, the Complaint provides no allegation that would allow the

17  Court to discern whether these members of NCFM are, for example, United States

18  citizens, members of military, or students at military academies.  Accordingly,

19

20  NCFC has failed to plead facts sufficient to show that "its members would have

21  standing to sue in their own right."  *See Associated Gen. Contractors*, 713 F.3d at

22  1194-95.

23

24          More fundamentally, NCFM's bid for organizational standing fails because

25  it has not identified a single individual member who has standing.  In order to

26  establish organizational standing, the Supreme Court has "required plaintiff-

27

28  organizations to make *specific allegations establishing that at least one identified*

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-12-

1  *member had suffered or would suffer harm.*"  *Summers v. Earth Island Inst.*, 555

2  U.S. 488, 497-98 (2009) (emphasis added).  This task, which should not be

3

4  difficult where an organization claims that many of its members are injured, is

5  necessary to assist the Court in fulfilling its independent obligation to assure that

6

7  standing exists.  *See* 555 U.S. at 499-500.  NCFM's complete failure to provide

8  allegations of this nature—let alone factual support—is fatal to its attempt to

9  invoke the Court's jurisdiction.  *See Associated Gen. Contractors*, 713 F.3d at

10

11  1195 (general allegations in unverified complaint failed to establish standing).

12  **II.    THE COURT SHOULD DISMISS THE CASE BECAUSE IT HAS
           BEEN BROUGHT IN THE WRONG VENUE.**

13

14        The flaws in Plaintiffs' Complain extend beyond the failure to adequately

15  allege personal injury.  Their case should also be dismissed because it has been

16  brought to the wrong venue.  NCFM and Lesmeister invoke this Court's

17

18  jurisdiction pursuant to 28 U.S.C. § 1331.[2]  Plaintiffs cite the wrong provision of

19  the venue statute, 28 U.S.C. § 1391(b), and then cursorily repeat text of the statute

20  to assert that venue is proper in this Court.  In fact, venue in actions against a

21

22  federal defendant is governed by 28 U.S.C. § 1391(e).  There are three potential

23

24  [2] They also wrongly assert that the Court has jurisdiction pursuant to 28 U.S.C. § 1343(3)
& (4).  *See* Compl. § 2b.  Section 1343(3) concerns the deprivation of rights "under color

25  of *State* law, statute, ordinance, regulation, custom or usage."  There are no allegations in
the Complaint about actions under color of state law.  Section 1343(4) concerns actions

26  under Federal civil rights statutes.  As explained below, like 28 U.S.C. § 1343(3), the
only statute Plaintiffs invoke concerns the actions of state governments and officials and

27  is, therefore, inapplicable in this action.

28

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-13-**

1   venues for such a suit:  "any judicial district in which (A) a defendant in the action

2   resides, (B) a substantial part of the events or omissions giving rise to the claim

3   occurred … or (C) the plaintiff resides if no real property is involved in the

4   action."  28 U.S.C. § 1391(d)(1).  None of these tests points to this district.

5

6           Both the federal defendants and the events at issue in the Complaint

7   occurred far away from the Central District of California.  The federal defendants

8   are deemed to reside where they perform their official duties—Washington, D.C.

9   or Northern Virginia.  *See, e.g.*, *Rangel v. Holder*, No. CV 10-00129 DDP

10  (FMOx), 2012 WL 1164080, *1 (C.D. Cal. Apr. 9, 2012); *Zhang v. Chertoff*, No. C

11  08-02589 JW, 2008 WL 5271995 *3 (N.D. Cal. Dec. 15, 2008) ("Federal

12  defendants are generally deemed to reside in the District of Columbia").  Further,

13  none of the events described in the Complaint occurred in the Central District of

14  California—the laws and regulations concerning the Selective Service System

15  were promulgated and are administered from Washington, D.C. (Compl. ¶¶ 17-18)

16  and the decision with respect to women in combat occurred in Washington, D.C.

17  (Compl ¶¶ 19-22).  Accordingly, neither NCFM nor Lesmeister can rely on 28

18  U.S.C. § 1391(d)(1)(A) or (B) as vesting venue in this judicial district.

19

20          Nor have NCFM or Lesmeister pled facts sufficient to show that they reside

21  in this district for purposes of 28 U.S.C. § 1391(d)(1)(C).  Lesmeister admits that

22  he lives in Texas.  *See* Compl. ¶ 10.  NCFM does not bother to make any

23  allegations as to where it is based, beyond asserting that it is a "501(c)(3)

24

25

26

27

28

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-14-**

1    educational and civil rights corporation organized under the laws of the State of

2    California," and that it is "registered with the Combined Federal Campaign for

3    non-profit organizations."  Compl. ¶ 5-6.  A search of public records and

4

5    information indicates that NCFM has no apparent connection to the Central

6    District of California.  For example, a search of the Internal Revenue Service's

7
     publicly available records of registered 501(c)(3) organizations reveals that there is
8
     an organization called the Coalition of Free Men Inc. doing business as "National
9
10   Coalition for Men NCFM."  *See* Request for Judicial Notice Ex. A.  The mailing

11   address and address for the principal officer of the organization are in San Diego,

12
     California.  *See id.*  The same address and principal officer are identified on what
13
14   appears to be NCFM's website.  *See* www.ncfm.com.   A search of the California

15   Secretary of State's corporations database returns no result for "National Coalition

16
     for Men" or "NCFM," but does return an entity called the Coalition of Free Men
17
18   that lists the same San Diego address as the address for its registered agent.  *See*

19   Request for Judicial Notice Ex. B.  The California Secretary of State database

20
     reveals that Coalition of Free Men is a *New York* corporation registered in
21
22   California.  A further search of the New York Secretary of States database reveals

23   that there is, indeed, a corporation called the Coalition of Free Men, Inc., listing an

24
     address on Manhattan's Upper East Side.  *See* Request for Judicial Notice Ex. C.
25
26   The National Coalition for Men apparently has a Los Angeles *chapter*, but that

27   appears to be a separate entity, as it has filed documents in legal proceedings as

28

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-15-

"National Coalition of Free Men, Los Angeles Chapter."  *See* Amicus Curiae Br. and Pet. to File Amicus Curiae Br. by Nat'l Coalition of Free Men, Los Angeles Chapter, *Angelucci v. Century Supper Club*, No. S136154, 2006 WL 5164105 (Cal. Ct. App. May 8, 2006).

As a general matter, a corporation like NCFM is deemed to reside in its principal place of business, which is usually where it is headquartered.  *See* 28 U.S.C. § 1391(c)(2); *Hertz Corp. v. Friend*, 130 S. Ct. 1181, 1192 (2010) (for diversity jurisdiction purposes, principal place of business is usually headquarters*)*; *L'Garde, Inc. v. Raytheon Space & Airborne Sys.*, 805 F. Supp. 2d 932, 940 (C.D. Cal. 2011).  There are no allegations that would support the conclusion that NCFM is headquartered in the Central District of California and available public information described above suggests that it is not.  Accordingly, Plaintiffs' complaint fails to demonstrate that venue is proper in this Court, and should be dismissed.  *See* 28 U.S.C. § 1406(a) (court may dismiss for improper venue).

## III.   THE COURT SHOULD DISMISS THE CASE BECAUSE IT IS NOT YET RIPE.

Alternatively, the Court should dismiss the case as unripe because Plaintiffs' theory rests entirely on the anticipated impact of policies that have not yet been implemented.  A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated….'"  *Texas v. U.S.*, 523 U.S. 296, 300 (1998) (internal quotations omitted).  As explained above, the new military policy concerning the role of women in combat will be implemented over the next

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-16-**

three years and, moreover, Congress has yet to consider the impact of those forthcoming changes on the Selective Service registration system.  The *Rostker* Court concluded that men and women were not similarly situated for purposes of a future draft in 1979.  *See Rostker*, 453 U.S. at 79.  But a full picture of the facts and policies that might bear on that question in 2013 and beyond are simply not yet known.  In these circumstances, where policy has just begun to be implemented, and Congress and the military have not had an adequate opportunity to act on these issues so plainly within their discretion and sphere of expertise, it would be entirely premature for the Court to venture a ruling on where the equal protection calculus should now fall with respect to the registration system.

In short, because Plaintiffs' claim of liability is contingent on an uncertain future event, the claim is not yet ripe, and the Court should dismiss the matter.

## IV.   SHOULD THE COURT REACH THE MERITS OF THIS CASE, IT SHOULD BE DISMISSED FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED.

Should the Court determine that it has jurisdiction over this case and that it is properly brought in this venue, then it should dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) because Plaintiffs fail to state a claim upon which relief can be granted.  Counts I and III are brought on legal theories that have nothing whatsoever to do with federal defendants.  Plaintiffs' central equal protection challenge in Count II fails because the law is clear that courts should defer to the military and political branches as it develops policies related to

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-17-**

the armed forces.  Moreover, and in any event, this district court may not  overturn a directly controlling precedent of the Supreme Court alleged to be outdated but must defer to the Supreme Court to review its own decisions.

**A.      The Legal Theories of Counts I & III Apply to State, not Federal Actors.**

Counts I and III should be dismissed outright.  Plaintiffs purport to press claims under the Fourteenth Amendment of the Constitution (Count I) and "28 U.S.C. § 1983" (Count III).  *See* Compl. ¶¶ 28-31.  Neither provides a basis for action against federal defendants.

The Fourteenth Amendment provides that "No *State* shall … deny any person within its jurisdiction the equal protection of the laws."  U.S. Const. Amend. XIV (emphasis added).  It is beyond dispute that the Fourteenth Amendment does not provide an independent basis for action against the Federal Government.  *See San Francisco Arts & Athletics, Inc. v. U.S. Olympic Committee*, 483 U.S. 522, 542 n.21 (1987).  Count I must be dismissed.

Likewise, Plaintiffs improperly assert a cause of action under "28 U.S.C. § 1983."  Presumably, the plaintiffs intended to invoke 42 U.S.C. § 1983.  That statute however, is addressed to violations of rights "under color of any statute, ordinance, regulation, custom, or usage, of *any State or Territory or the District of Columbia* .…" 42 U.S.C. § 1983 (emphasis added).  42 U.S.C. § 1983 simply does not apply to the "actions of the Federal Government and its officers."  *District of Columbia v. Carter*, 409 U.S. 418, 524-25 (1973).  Accordingly, this count should

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-18-**

be dismissed for failure to state a claim.

### B. Plaintiffs Fail to State a Valid Equal Protection Challenge at this Stage.

In Count II, Plaintiffs assert that the current registration requirements, which were upheld as constitutional by the Supreme Court in *Rostker* are nevertheless unconstitutional today because they deny men the equal protection of the law. Plaintiffs' assertion fails to state a claim under the Supreme Court's analysis of equal protection in the military context.  As a general matter, "[t]o withstand scrutiny under the equal protection component of the Fifth Amendment's Due Process Clause, 'classifications by gender must serve important governmental objectives and must be substantially related to achievement of those objectives.'" *Califano v. Webster*, 430 U.S. 313, 136-17 (1977).  In *Rostker*, the Supreme Court found that Congress' objective in establishing the MSSA and the registration requirement was the "raising and supporting of armies," which was undeniably important.  *See Rostker*, 453 U.S. at 70.  In deciding whether to find that Congress's choice of alternatives was substantially related to that goal, the Court concluded that Congress' choice to register men was "not only sufficiently but also closely related to Congress' purpose in authorizing registration."  *Id.* at 79. Plaintiffs' complaint advances no argument that Congress' purpose in authorizing registration is no longer important.  Instead, they appear to argue that Congress' chosen method of achieving that interest, while undisputely constitutional in 1979, is now unconstitutional because of subsequent events.  But the principals of

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-19-**

deference taught in *Rostker* and related cases apply to foreclose judicial interference in the policy process now underway concerning the role of women in combat and the impact of policy changes on the Selective Service system.

### 1. The Court Should Defer to the Political Branches' Determinations Regarding the Country's Military Needs.

The law is clear that "in the context of Congress' authority over national defense of military affairs" the courts' deference is particularly broad. *See Rostker*, 453 U.S. at 64. Congress has a "'broad constitutional power' to raise and regulate armies," and "[n]ot only is the scope of Congress' constitutional power in this area broad, but the lack of competence on the part of the courts is marked." *Id.* Ultimately, "in deciding" whether Congress has acted constitutionally in a military matter, courts "must be particularly careful not to substitute [their] judgment of what is desirable for that of Congress, or [their] judgment of what is desirable for that of Congress, or [their] own evaluation of evidence for a reasonable evaluation by the Legislative Branch." *Id.* at 68. These broad principals have been repeatedly affirmed by the Supreme Court.[3]

Indeed, "'judicial deference … is at its apogee' when Congress legislates

---

[3] *See Holder v. Humanitarian Law Project*, 130 S. Ct. 2705, 2727 (2010) (citing *Rostker*); *Boumediene v. Bush*, 533 U.S. 723, 823 (2008) (citing *Rostker*); *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 58 (2006); *Loving v. U.S.*, 517 U.S. 748, 768 (1996) (citing *Rostker*); *Weiss v. U.S.*, 510 U.S. 163, 177 (1994) (citing *Rostker*); *Solorio v. U.S.*, 483 U.S. 435, 447-48 (1987) (citing *Rostker*); *Goldman v. Weinberger*, 475 U.S. 503, 508 (1986) (citing *Rostker*); *Chappell v. Wallace*, 462 U.S. 296, 301 (1983) (citing *Rostker*).

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-20-**

under its authority to raise and support armies." *Rumsfeld v. Forum for Acad. & Inst. Rights*, *Inc.*, 547 U.S. 47, 58 (2006). What sorts of troops might be needed in a future draft is based on "judgments concerning military operations and needs" in the exercise of that power. *Rostker*, 453 U.S. at 68. The courts are not well positioned to either second-guess Congress's judgments about these judgments or to make them in the first instance. "The Judiciary has neither the power nor the competence to undertake these awesome responsibilities and, thus, should defer to the will of Congress in carrying out" the duty to provide for the common defense. *See Schwartz v. Brodsky*, 265 F. Supp. 2d 130, 135 (D. Mass. 2003).

Pursuant to these bellwether principles, the Court should defer to the policymaking process presently underway in the military and Congress concerning the role of women in combat and not permit Plaintiffs to interfere in that process. Plaintiffs cannot establish, nor should the Court attempt to predict, the effect that the implementation of changed policies will have on overall military needs in case of draft. While the Secretary of Defense has rescinded the prohibition on women in combat, that policy change is in the process of being fully implemented. *See, e.g.*, Stmt. by John M. McHugh & Raymond Odierno, Senate Armed Services Committee at 12, Apr. 23, 2013 (Ex. C at 71).[4] Congress has not yet been informed of all the details of that change and thus has not yet considered whether

---

[4] Available at http://www.armed-services.senate.gov/statement/2013/04%20April/McHugh-Odierno_04-23-13.pdf

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.*, **CV13-02391-DSF(MANx)**

**-21-**

1   to revise the Selective Service requirements.  The law counsels that courts should

2   not substitute its judgment for that of Congress and, in the present circumstances,

3   take any action in advance of Congress in a significant matter of military affairs.

4

5        Indeed, it would be particularly inappropriate for the Court to intervene here,

6   where Congress is aware of the interplay between the role of women in combat and

7   future Selective Service needs and has made specific provisions for considering the

8   issue as circumstances change.  10 U.S.C. § 652 provides that before the Secretary

9   of Defense "opens to service by female members of the armed forces any category

10  of unit or position that at that time is closed to service by such members," he or she

11  must notify Congress.  *See* 10 U.S.C. § 652(a)(1) & (2).  In reporting to Congress,

12  the Secretary is required to provide, "a detailed analysis of legal implication of the

13  proposed change with respect to the constitutionality of the application of the

14  [MSSA] to males only."  *Id.* § 652(a)(3)(B).  Accordingly, Congress is aware of

15  the connection between the changing shape of the military and Selective Service

16  registration and is requiring that the Executive provide it with information so that it

17  can exercise its judgment at the appropriate time.  The Court should thus not

18  interfere before Congress has had an adequate chance to consider the matter just

19  months after the military instituted new policies.

20

21        In sum, while the United States military continues to evolve as an

22  organization, it would be inappropriate for courts to intervene at this stage.

23  Plaintiffs ask this Court step in and make its own judgment before Congress has

24

25

26

27

28

**Mem. in Supp. of Mot. to Dismiss,** *National Coalition for Men, et al. v. Selective Service System, et al.***, CV13-02391-DSF(MANx)**

**-22-**

even had time to react to ongoing changes in the structure of the military.  To do so would be wholly inconsistent with the requirement that courts defer to Congress's military judgments, especially with respect to raising armies, a duty specifically assigned in the Constitution to the legislature.

### 2.  Even if the Court Declined to Defer to the Military, It Would Remain Bound by *Rostker* at this Stage.

Finally, even if the Court were inclined not to defer to the ongoing policy process in Congress and the military, it still should not overturn *Rostker* as a legal matter.  Plaintiffs' claim is based on the premise that the Supreme Court's reasoning in *Rostker* is outdated and that, therefore, the Court should order the defendants to change their policies.  *See* Compl. ¶¶ 19-20.  In essence, therefore, they ask this Court to both overrule a controlling precedent of the Supreme Court and substitute this Court's judgment for that of Congress and the President with respect to the functioning of the Selective Service System.  Defendants respectfully suggest that the Court should do neither of these things.

As the Supreme Court has explained, "[i]f a precedent of this Court has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Rodriguez de Quijas v. Shearson/American Express, Inc.*, 490 U.S. 477, 484 (1989).  The Ninth Circuit has elaborated:  "the circuit courts must follow Supreme Court precedent until the Supreme Court itself declares it no longer binding."

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-23-**

*Musladin v. Lamarque*, 555 F.3d 830, 837 (9th Cir. 2009).  That this is so is dictated by the hierarchical nature of the federal courts.  Lower courts must follow the precedents set by higher courts:  "A decision of the Supreme Court will control that corner of the law unless and until the Supreme Court overrules or modifies it.  Judges of the inferior courts may voice their criticisms, but follow it they must."  *Hart v. Massanari*, 266 F.3d 1155, 1170-71 (9th Cir. 2001).

The opposite approach, under which district and circuit courts determine when a Supreme Court precedent has become outdated or no longer binding, would undermine the very purposes of *stare decisis*, run contrary to the hierarchical nature of federal courts, and improperly remove from the Supreme Court the prerogative of deciding when it is appropriate for it to overturn its own precedents.  Adherence to the doctrine of *stare decisis* "promotes the evenhanded, predictable, and consistent development of legal principles, fosters reliance on judicial decisions, and contributes to the actual and perceived integrity of the judicial process."  *Payne v. Tennessee*, 501 U.S. 888, 827 (1991).  Even where a litigant asserts that a decision is "outdated," it can only be overturned by the court that issued the decision.  An inferior court cannot decide for itself that a precedent has reached its expiration date.  *See Rambus, Inc. v. Hynix Semiconductor Inc.*, 569 F. Supp. 2d 946, 964 (N.D. Cal. 2008).  Even if the Court agrees with Plaintiffs' view of the equal protection claim, it should not arrogate to itself the power to reverse Supreme Court precedent.  *See State Oil Co. v. Kahn*, 522 U.S. 3, 20 (1997) ("[I]t

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

-24-

1 | is this Court's prerogative alone to overrule one of its precedents.").

**CONCLUSION**

For the forgoing reasons, this case must be dismissed.

Dated:  June 19, 2013                    Respectfully Submitted,

                                         STUART F. DELERY
                                         Acting Assistant Attorney General

                                         ANTHONY J. COPPOLINO
                                         Deputy Branch Director


                                         *Bryan R. Diederich*
                                         BRYAN R. DIEDERICH (MA Bar. No. 647632)
                                         United States Department of Justice
                                         Civil Division
                                         20 Massachusetts Ave, NW
                                         Washington, D.C. 20004
                                         Tel: (202) 305-0198
                                         Fax: (202) 616-8470
                                         Bryan.Diederich@usdoj.gov
                                         *Counsel for the Defendants*

Mem. in Supp. of Mot. to Dismiss, *National Coalition for Men, et al. v. Selective Service System, et al.*, CV13-02391-DSF(MANx)

**-25-**